982 A.2d 1168

**Charles F. WILLIAMS, Jr.**

v.

**STATE of Maryland.**

**No. 01999, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Oct. 30, 2009.

James B. Hopewell, Riverdale, for Appellant.

Jeremy M. McCoy (Douglas F. Gansler, Atty. Gen., on brief), for Appellee.

Panel: WRIGHT, MATRICCIANI, RODOWSKY, LAWRENCE F. (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

Appellant Charles F. Williams, Jr. appeals the judgment of the Circuit Court for Prince George's County convicting him of unlawful possession of a handgun. On October 6, 2008, the court sentenced Williams to three years of incarceration, with all but one year suspended, for violating Md.Code (2002), § 4–203(a)(1)(i) of the Criminal Law Article ("CL"). Appellant presented four issues for our consideration, which we have consolidated into three issues and rephrased as such:

I. Whether the circuit court erred in ruling that CL § 4–203 does not infringe appellant's right to keep and bear arms under the Constitution of the United States.

II. Whether the police officer violated appellant's "right to instrastate [sic] travel" by stopping and interrogating appellant without reasonable cause.

III. Whether the circuit court erred when it failed to grant appellant's motion to suppress evidence.

We affirm the circuit court's ruling and treat each issue in turn.

## FACTS

On August 15, 2007, appellant purchased a handgun from a licensed dealer in Forestville, Maryland. Appellant completed the Maryland State Police application and submitted an affidavit to purchase a regulated firearm that same day and received a certificate of completion for both. On September 14, 2007, appellant paid the balance that was due on the handgun.

On October 1, 2007, the appellant went to his girlfriend's house and picked up the gun. While the appellant was en

route to his home, an officer with the Prince George's County Police Department observed him rummaging through a back-pack near a wooded area. The officer then turned his cruiser around and observed appellant turn and place something in the brush area "as if he was hiding something." The officer approached the appellant and asked what he was doing. Appellant responded that he was going through the backpack to see what was in it. The officer then asked what appellant had hidden in the bushes, to which he replied, "my gun."

The officer recovered a black handgun from the brush area where he had observed appellant. After the officer read the appellant his *Miranda*[1] rights, the appellant gave a written statement in which he acknowledged possession of the gun and that he had placed the gun in the area where the officer located it.

On August 25, 2008 the circuit court held a motions hearing in which it denied appellant's motion to suppress his oral statements to the officer. The court issued a written memo-randum and order in response to appellant's motion to dismiss the indictment based on *District of Columbia v. Heller*, — U.S. ——, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), finding that the exceptions to the ban on the wearing, carrying or trans-porting of a handgun as set forth by the Maryland legislature in CL § 4–203 complied with the holding in *Heller*.

## DISCUSSION

### I.

Appellant contends that the circuit court infringed his con-stitutional right to keep, bear, and carry arms [2] by ruling that he committed a crime. He argues that both CL § 4–203 and

---

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires police to administer warnings to individuals who are taken into custody and subject to questioning.

**2.** "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

the regulations which control applications for handgun permits are unconstitutional based on *Heller.*

He also argues that Maryland's regulatory scheme for handguns violates constitutional standards by imposing criminal penalties for violations of the statute rather than less oppressive civil penalties. In support of this argument he cites to Title 29 of the Code of Maryland Regulations (COMAR), which regulates security guard certification and imposes administrative penalties for an agency that allows employees to be armed in the performance of their duty without a valid permit. Appellant argues that the discrepancy between the criminal code and COMAR amounts to an equal protection violation.

Appellant was punished pursuant to CL § 4–203, which provides, in pertinent part:

(a) *Prohibited.*—(1) Except as provided in subsection (b) of this section, a person may not:

(i) wear, carry, or transport a handgun, whether concealed or open, on or about the person [ . . . ]

*     *     *

(b) *Exceptions.*—This section does not prohibit [ . . . ]

*     *     *

(2) the wearing, carrying, or transporting of a handgun by a person to whom a permit to wear, carry, or transport the handgun has been issued under Article 27, § 36E [3] of the Code [ . . . ]

*     *     *

(6) the wearing, carrying, or transporting of a handgun by a person on real estate that the person owns or leases or where the person resides or within the confines of a business establishment that the person owns or leases [ . . . ]

*     *     *

---

**3.** These provisions are now located in Md.Code (2003), § 5–301– § 5–314 of the Public Safety Article.

(c) *Penalty.*—

(1) A person who violates this section is guilty of a misdemeanor and on conviction is subject to the penalties provided in this subsection.

(2) If the person has not previously been convicted under this section, § 4–204 of this subtitle, or § 4–101 or § 4–102 of this title:

(i) except as provided in item (ii) of this paragraph, the person is subject to imprisonment for not less than 30 days and not exceeding 3 years or a fine of not less than $250 and not exceeding $2,500 or both [.]

In determining the constitutionality of a statute, "the basic rule is that there is a presumption that the statute is valid." *Galloway v. State,* 365 Md. 599, 611, 781 A.2d 851 (2001). We are reluctant to find a statute unconstitutional if, "by any construction . . . it can be sustained." *Beauchamp v. Somerset County,* 256 Md. 541, 547, 261 A.2d 461 (1970). If we determine that the statute is vague, and thus offends due process, or over broad, by "sweep[ing] within the ambit of constitutionally protected expressive or associational rights", then we will find the statute unconstitutional. *Galloway,* 365 Md. at 612, 781 A.2d 851. The party challenging the statute's constitutionality bears the burden of establishing its unconstitutionality. *Beauchamp,* 256 Md. at 547, 261 A.2d 461. Appellant fails to shoulder this burden here.

To begin, we note that there is no Maryland corollary of the federal constitutional right codified in the Second Amendment.[4] Furthermore, we have held previously that the Second

---

4. Justice Scalia, writing for the Court, found that four states adopted analogues to the federal Second Amendment in the period between independence and the ratification of the Bill of Rights. *District of Columbia v. Heller,* —— U.S. ——, ——, 128 S.Ct. 2783, 2801, 171 L.Ed.2d 637. Between 1789 and 1820, nine additional states adopted Second Amendment analogues, but not Maryland. *Id.* Although some have argued that Article 28 of the Maryland Declaration of Rights ("That a well regulated Militia is the proper and natural defence of a free Government.") is Maryland's analogue to the federal Second Amendment, this argument was rejected by the Office of the Attorney

Amendment is not applicable to the states. *See Onderdonk v. Handgun Permit Review Board of Dep't of Public Safety & Correctional Services*, 44 Md.App. 132, 135, 407 A.2d 763 (1979); *see also Scherr v. Handgun Permit Review Bd.*, 163 Md.App. 417, 443, 880 A.2d 1137 (2005). This is significant because it means that appellant must hang his musket, so to speak, on *Heller*'s interpretation of the federal constitutional right. Heller filed a lawsuit in U.S. District Court for the District of Columbia seeking to enjoin the city from enforcing the bar on the registration of handguns, the licensing require-ment insofar as it prohibited the carrying of a firearm in the home without a license, and the trigger-lock requirement insofar as it prohibited the use of "functional firearms within the home." *Heller*, 128 S.Ct. at 2788. The Supreme Court held that the Second Amendment guaranteed the individual right to possess and carry weapons in case of confrontation. *Id.* at 2797. As a consequence of this interpretation, the Court held that the District's ban on handgun possession in the home violated the Second Amendment, as did its prohibi-tion against rendering any firearm operable for the purpose of immediate self-defense, if it is lawfully within the home. *Id.* at 2822.

Of more immediate concern for the issue before us, and ultimately fatal to appellant's argument, is the fact that the *Heller* Court reaffirmed the holding in *United States v. Cruik-shank*, 92 U.S. 542, 23 L.Ed. 588 (1875), that "[t]he [S]econd [A]mendment ... means no more than that it shall not be infringed by Congress." *Id.* at 553. While parenthetically noting the weakness of *Cruikshank*'s argument regarding non-

---

General in the context of a challenge to the "Maryland Comprehensive Gun Control Act," where it found:

In Maryland, the militia is "well regulated" by Article 65 of the Code ... The General Assembly thus has made the manifestly reasonable judgment that the needs of the militia can be met with State-owned firearms held in secure locations. No tenable argument can be made that the needs of the State militia can only be met by affording private citizens access to the kinds of firearms that would be restrict-ed under House Bill 1283.

79 OAG 206 (1994).

incorporation of the right, the Court found that its later decisions in *Presser v. Illinois,* 116 U.S. 252, 6 S.Ct. 580, 29 L.Ed. 615 (1886), and *Miller v. Texas,* 153 U.S. 535, 14 S.Ct. 874, 38 L.Ed. 812 (1894), reaffirmed that the Second Amendment applies only to the federal government. *Heller,* 128 S.Ct. at 2813. Appellant can cite to only one case subsequent to *Heller* in which a court has held that the right established in *Heller* applies against state and local governments. In that decision, *Nordyke v. King,* 563 F.3d 439 (9th Cir.2009), *reh'g granted,* 575 F.3d 890 (9th Cir.2009), a panel of judges in the Ninth Circuit held that the right to bear arms was a fundamental right warranting substantive due process protection through the Fourteenth Amendment. However, an *en banc* rehearing was granted for this case in July with the express instruction that "[t]he three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit." *Nordyke,* 575 F.3d at 890. After rehearing the case on September 24, 2009, the Court issued an order postponing judgment until the Supreme Court's disposition of three similar cases which had *certiorari* petitions pending.

All other circuits that have addressed the issue have found that the Second Amendment does not apply to state and local governments. *See, e.g., Nat'l Rifle Assoc. v. City of Chicago,* 567 F.3d 856, 859 (7th Cir.2009) ("One function of the second amendment is to prevent the national government from interfering with state militias. It does this by creating individual rights, *Heller* holds, but those rights may take a different shape when asserted against a state rather than against the national government."); *Maloney v. Cuomo,* 554 F.3d 56 (2nd Cir.2009); *Bletz v. Gribble,* 640 F.Supp.2d 907, 2009 U.S. Dist. LEXIS 59629 (W.D.Mich. July 10, 2009). In the Seventh Circuit case Judge Easterbrook noted:

> [T]he Constitution establishes a federal republic where local differences are to be cherished as elements of liberty rather than extirpated in order to produce a single, nationally applicable rule (citations omitted). Federalism is an older and more deeply rooted tradition than is a right to carry any particular kind of weapon. How arguments of this kind

will affect proposals to "incorporate" the second amendment are for the Justices rather than a court of appeals.

*Nat'l Rifle Assoc. v. City of Chicago,* 567 F.3d 856, 860 (7th Cir.2009).

The Supreme Court has granted *certiorari* in this case, and will hear oral argument and issue its judgment before the end of the term, which typically lasts until late June or early July. *McDonald v. City of Chicago,* —— U.S. ——, 130 S.Ct. 48, 174 L.Ed.2d 632, No. 08–1521, 2009 U.S. LEXIS 5150 (September 30, 2009). Meanwhile, we can find no decision from a state court which incorporates this right, with most state courts expressly declining to do so. *See, e.g., State v. Turnbull,* 766 N.W.2d 78 (Minn.Ct.App.2009); *People v. Yarbrough,* 169 Cal.App.4th 303, 86 Cal.Rptr.3d 674 (2008); *People v. Abdullah,* 23 Misc.3d 232, 870 N.Y.S.2d 886 (N.Y.City Crim.Ct.2008). Until the Supreme Court rules definitively on incorporation of the Second Amendment, we must assume, without deciding, that it has not been incorporated.

■ Even if the Second Amendment did apply, it would not invalidate the statute at issue here. CL § 4–203 provides that a person may not "wear, carry, or transport a handgun, whether concealed or open, on or about the person" or "in a vehicle traveling on a road or parking lot generally used by the public, highway, waterway, or airway of the State." CL § 4–203(a)(i), *id.* at (a)(ii). This blanket prohibition is modified by subsection b of the statute, which provides eight exceptions to the general rule outlined above. One of these exceptions is for possession of a gun by a person on real estate that the person owns or leases or where the person resides. CL § 4–203(b)(6). Thus, even if the right articulated in *Heller,* namely the right to keep and bear arms in the home for the purpose of immediate self-defense, were to apply to the citizens of Maryland, this statute does not infringe upon that right.

Appellant also challenges Maryland's handgun permit scheme, which is contained at Md.Code (2003), § 5–301– § 5–

314 of the Public Safety Article ("PS"). Appellant challenges only two aspects of this scheme, which are:

### § 5–306. Qualifications for permit.

(a) *In general.*—Subject to subsection (b) of this section, the Secretary shall issue a permit within a reasonable time to a person who the Secretary finds [ . . . ]

\*　　\*　　\*

(5) based on an investigation:

(i) has not exhibited a propensity for violence or instability that may reasonably render the person's possession of a handgun a danger to the person or to another; and

(ii) has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger.

### § 5–307. Scope of Permit

(a) *In general* [ . . . ]

(b) *Limitations.*—The Secretary may limit the geographic area, circumstances, or times of the day, week, month, or year in which a permit is effective.

Appellant argues that § 5–306(a)(5) permits an investigation that is overly broad and vague. He also argues that § 5–307(b) is "grossly unconstitutional for essentially the same reasons."

In assessing the reasonableness of the state's exercise of its police power, the Court of Appeals noted in *State v. Crawford,* 308 Md. 683, 521 A.2d 1193 (1987), that handgun control legislation was "spurred by a dramatic increase in the number of crimes perpetrated with handguns and a concomitant increase in the number of deaths and injuries caused by persons carrying handguns on the street[.]" *Id.* at 694, 521 A.2d 1193. The permit scheme which appellant attacks as facially unconstitutional is clearly within the state's police power and eminently serves the legislature's purpose in enacting the statute, namely to ensure public safety by "discourag[ing] and pun-

ish[ing] the possession of handguns on the streets and public ways." *Id.* at 695, 521 A.2d 1193.

The two provisions noted above reflect the fact that the state's police power compels it to take measures to contain the well-documented danger which stems from the proliferation of handguns. Rather than ban handguns outright, as the District of Colombia did in *Heller,* the General Assembly chose to place limits on who may lawfully own a handgun in order to reduce the possibility that they may be used "on the streets and public ways." The General Assembly has not seen fit to amend Maryland's handgun permit scheme in response to any evidence that its purpose has been undermined by intervening circumstances or by the decision in *Heller.*

Furthermore, appellant does not cite to a single case to support his contention that civil penalties, rather than criminal penalties, are an appropriate response to a violation of the statute. Likewise, appellant's equal protection argument does not hold up under close scrutiny. The section he cites, COMAR 29.04.01.07, establishes penalties for those licensees, firms and persons that hold a security guard certification. Administrative penalties are administered for what amounts to poor supervision by these licensees of those employees who do not have a valid handgun permit. The criminal code, on the other hand, establishes penalties for the actual possessor of the handgun who lacks a valid permit. Thus, this is not a case of one law treating classes of people differently, but of two separate laws treating two separate types of offenders differently.

Without a constitutional infirmity, it is not our role to decide these questions, but rather that of the State legislature. In the absence of a clear directive from the Supreme Court, we are not at liberty to strike down CL § 4–203 as violative of appellant's right to keep and bear arms under the Second Amendment to the United States Constitution. *Heller* did not provide that clear directive.

## II.

■ Appellant contends that the police officer violated his "right to intrastate travel" by stopping and interrogating him without reasonable cause. According to Md. Rule 8–131(a), "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court." Appellant did not raise this argument at the trial level, and thus it is unpreserved for our review and we decline to address it.

## III.

Appellant contends that the circuit erred when it failed to grant appellant's Motion to Suppress evidence. The Court of Appeals recently restated the proper standard of review when reviewing the denial of a motion to suppress:

> [W]e consider only the evidence contained in the record of the suppression hearing. We extend great deference to the hearing judge's findings of fact and those findings will not be disturbed unless clearly erroneous. We review the evidence and the inferences that may be reasonably drawn in the light most favorable to the prevailing party. We make our own independent appraisal as to whether a constitutional right has been violated by reviewing the law and applying it to the facts of the case.

*Bost v. State,* 406 Md. 341, 349, 958 A.2d 356 (2008) (citations omitted).

■ At trial, appellant filed a Motion to Suppress statements he made to the police. Because appellant challenged his custodial status, the trial court correctly treated that Motion to Suppress as a Fifth Amendment issue and analyzed it accordingly. Here, appellant's brief argues that the handgun should be suppressed because the officer was wrong to conduct a search without probable cause or a reasonable suspicion, standards which do not apply in the context of a Fifth Amendment violation. Appellant did not file a Motion to Suppress the recovery of the handgun at the trial level. Because appellant did not clearly articulate a Fourth Amend-

ment claim at the trial level, that claim can not be introduced at the appellate level. *See Johnson v. State,* 138 Md.App. 539, 560, 772 A.2d 1260 (2001) (failure to argue particular theory constitutes waiver of that theory on appeal). We agree with the State that appellant's Fourth Amendment claim was unpreserved and thus do not address the merits of this argument.

■ Appellant's reply brief now changes course, arguing that the police officer's questioning constituted custodial interrogation [5] and that under the "fruit of the poisonous tree" doctrine the handgun should also be suppressed. However, we are not at liberty to address appellant's renewed Fifth Amendment claim. Concerning reply briefs we have held:

> The function of a reply brief is limited. The appellant has the opportunity and duty to use the opening salvo of his original brief to state and argue clearly each point of his appeal. The reply brief must be limited to responding to the points and issues raised in the appellee's brief ... To allow new issues or claims to be injected into the appeal by a reply brief would work a fundamental injustice upon the appellee, who would then have no opportunity to respond in writing to the new questions raised by the appellant.

*Hollingsworth & Vose Co. v. Connor,* 136 Md.App. 91, 125, 764 A.2d 318 (2000). Had appellant raised the issue in his original brief, we would have had to address the trial court's treatment of the issue. However, since appellant did not use his original brief to articulate his Fifth Amendment claim, he can not introduce it through his reply brief.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

**5.** Custodial interrogation is a prerequisite to any claim of a *Miranda* violation under the 5th Amendment. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). This appears to be the tactic employed at trial to suppress appellant's statements.