*Robert L. Fooks v. State of Maryland*, Case No. 269, September Term 2021. Opinion by Nazarian, J.

**CONSTITUTIONAL LAW – SECOND AMENDMENT – SECTIONS 5-133(b)(2) AND 5-205(b)(2) OF THE PUBLIC SAFETY ARTICLE – FACIAL CHALLENGE**

Sections 5-133(b)(2) and 5-205(b)(2) of the Public Safety Article, which prohibits a person from possessing a firearm if that person has been convicted of a violation classified as a common law crime and received a sentence of imprisonment of more than two years, are not unconstitutional in all their applications and are thus not facially unconstitutional.

**CONSTITUTIONAL LAW – SECOND AMENDMENT – SECTIONS 5-133(b)(2) AND 5-205(b)(2) OF THE PUBLIC SAFETY ARTICLE – AS APPLIED CHALLENGE – CRIMINAL CONTEMPT**

Sections 5-133(b)(2) and 5-205(b)(2) of the Public Safety Article are presumptively lawful and thus not unconstitutional as applied to Mr. Fooks, because a conviction for criminal contempt for failure to pay child support does not fall within "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 269

September Term, 2021

_____

ROBERT L. FOOKS

v.

STATE OF MARYLAND

_____

Nazarian,
Friedman,
Battaglia, Lynne A.
 (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: June 29, 2022

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Robert Fooks was charged by way of criminal information with ten counts of illegal possession of a rifle or shotgun, three counts of illegal possession of a regulated firearm, and one count of theft. He moved to dismiss all firearm-related charges on the ground that they violated his Second Amendment right to bear arms. The Circuit Court for Wicomico County denied the motion. Mr. Fooks entered a conditional guilty plea to two counts of illegal possession of a regulated firearm and reserved the right to appeal the denial of his motion to dismiss. On appeal, Mr. Fooks argues that the statutory scheme used to charge and convict him is facially unconstitutional or unconstitutional as applied to him. We disagree and affirm.

## I. BACKGROUND

On January 26, 2021, the State charged Mr. Fooks with thirteen counts of unlawfully possessing various firearms between November 12, 2018 and July 18, 2020.[1] The criminal information alleged that a 2016 conviction of constructive criminal contempt disqualified Mr. Fooks from possessing firearms,[2] and the charges included violations of two provisions of the Public Safety Article ("PS") of the Maryland Code (2003, 2018 Repl. Vol.). Section 5-133(b)(2) provides that "a person may not possess a regulated firearm if the person . . . has been convicted of a violation classified as a common law crime and received a term of

---

[1] Mr. Fooks was charged with illegally possessing regulated firearms, rifles, and shotguns. Title 5 of the Public Safety Article, "Firearms," encompasses both regulated firearms and rifles or shotguns. To avoid any confusion, and because it doesn't alter our analysis, we refer to the weapons collectively as "firearms."

[2] Mr. Fooks asserts that he was convicted of constructive criminal contempt in 2017. However, Maryland's Electronic Courts case management system indicates that Mr. Fooks pleaded guilty to the constructive criminal contempt charge on October 13, 2016.

imprisonment of more than 2 years[.]" Similarly, PS § 5-205(b)(2) provides that "[a] person may not possess a rifle or shotgun . . . if the person has been convicted of a violation classified as a crime under common law and received a term of imprisonment of more than 2 years[.]"[3]

On February 3, 2021 defense counsel filed a motion to dismiss, asserting that the firearm-related charges infringed on Mr. Fooks's right to bear arms, as guaranteed to him by the Second Amendment of the Constitution of the United States. Mr. Fooks argued that PS §§ 5-133(b)(2) and 5-205(b)(2) were unconstitutional as applied to him because "[t]he only reason that Mr. Fooks has been disqualified from possessing a firearm is a prior constructive criminal contempt conviction" for failure to pay child support. He cited a line of Fourth Circuit cases (we'll discuss these in detail later) that apply a two-prong test to determine the constitutionality of a disarmament law. The defense maintained that the *first* prong of the test requires *either* (a) the challenger to rebut a presumption of lawfulness by proving that the facts of their case are different from "ordinary challenges" to felon disarmament laws, *or* (b) if the challenger is disqualified because of a common law crime conviction (and not a statutory felony), a "historical review to evaluate whether rights, as understood in 1791, are burdened by the statute . . . ."

Mr. Fooks argued that he satisfied the first prong under either analysis because he was "a law abiding, responsible citizen . . . ." The court could find that PS §§ 5-133(b)(2)

---

[3] The court sentenced Mr. Fooks to four years and six months of imprisonment for the contempt conviction. The record is unclear, however, on how long of that sentence he actually served.

and 5-205(b)(2) were not presumptively lawful as applied to him, he said, because a conviction for constructive criminal contempt is different from a conviction for a violent, serious felony. Alternatively, since contempt is considered a common law offense in Maryland, the court could engage in a historical review to determine that he would not have been excluded from possessing a firearm in 1791.

If the court finds that the challenger satisfies the first prong, then it proceeds to the *second* prong and determines whether the challenged law passes judicial scrutiny. The defense asserted that the State had the burden to demonstrate that PS §§ 5-133(b)(2) and 5-205(b)(2) satisfied intermediate scrutiny, which they defined as "a reasonable fit between the challenged regulation and a substantial government objective" (cleaned up). And as applied to this case, he argued, "there is not even rational basis to conclude that disqualifying a person, convicted for failing to pay child support, serves the government goal of reducing gun violence in any capacity." Because PS §§ 5-133(b)(2) and 5-205(b)(2) failed to satisfy intermediate scrutiny, the defense asked the court to dismiss the charges against Mr. Fooks.

On March 8, 2021, the State responded. It emphasized that "[w]hile the [r]ight to [b]ear [a]rms is a fundamental constitutional right, much like other rights, their bounds are not endless." The State recounted a history of PS § 5-133(b)'s precursor and concluded that the statutory text "makes it clear that the legislature recognized that there would be certain crimes that did not carry felony convictions, that still should prohibit an individual from possessing a firearm."

The State argued that Mr. Fooks's motion "m[et] its demise, squarely on the

3

two-pronged framework used in analyzing as-applied challenges to firearm prohibitions." The State asserted that the court didn't need to conduct a historical review under the first prong of the test "'to determine whether the conduct at issue was understood to be within the scope of the Second Amendment at the time of ratification'" (*quoting Hamilton v. Pallozzi*, 848 F.3d 614, 624 (4th Cir. 2017)). Rather, the court could instead conduct a "streamlined analysis," by "'supplant[ing] the historical inquiry with the more direct question of whether the challenger's conduct is within the protected Second Amendment right of law abiding, responsible, citizens to use arms in defense of hearth and home'" (*quoting Hamilton*, 848 F.3d at 624).

Applying this framework, the State disputed that Mr. Fooks's conduct fell "within the protected right of law-abiding, responsible citizens to use arms in defense of hearth and home," because although he possessed the firearms, he never owned them. Instead, he stole the firearms from a relative (hence the theft charge) and sold them at a pawn shop. In other words, the State asserted that because Mr. Fooks did not have a Second Amendment right in someone else's firearms, his case was not different from "ordinary challenges" to disarmament laws. Therefore, PS §§ 5-133(b)(2) and 5-205(b)(2) were not unconstitutional as applied to Mr. Fooks and were "valid regulation[s] to one's Second Amendment right."

The court held a hearing on the motion to dismiss on March 17, 2021. The defense asked the court to evaluate the challenged statutes using the historical inquiry analysis because subsections (b)(2) of both §§ 5-133 and 5-205 had never been upheld as valid. Because Maryland lacked case law concerning these specific statutory provisions, the

4

defense argued, there could be no presumption of validity. The court asked whether it could find PS §§ 5-133(b)(2) and 5-205(b)(2) presumptively valid based solely on the legislature's determination that people convicted of a common law crime who receive a prison term of more than two years should be disqualified from possessing a firearm. The defense rejected this position, arguing that just because a legislature passes a valid law does not make it presumptively constitutional. And under the historical inquiry approach, Mr. Fooks claimed there was no evidence that a criminal contempt conviction would have barred him from possessing a firearm in 1791.

Turning to the second prong, Mr. Fooks argued that PS §§ 5-133(b)(2) and 5-205(b)(2) were "not narrowly tailored to serve a significant government interest[,]"and that the government's interest in disqualifying individuals convicted of a crime from possessing a firearm "burden[s] substantially more conduct than is necessary . . . ." Mr. Fooks's conduct of failing to pay child support, he argued, fell outside the scope of the government's interest and thus burdened Mr. Fooks more than necessary.

The court took issue with defense counsel's characterization of Mr. Fooks's conviction, asserting that "the criminality [was] the contempt of court, not the underlying basis for the contempt of court[.]" It was Mr. Fooks's failure to follow a court order, regardless of what that court order specified, that enabled the sentencing court to sentence Mr. Fooks to more than two years' incarceration. Defense counsel suggested that even considering the "contempt as a whole" didn't lead to the conclusion that Mr. Fooks was a dangerous person. Based on the State's failure to prove that Mr. Fooks was a dangerous person and the lack of "historical proof" that criminal contempt was meant to be a

5

disqualifying crime in 1791, defense counsel contended that PS §§ 5-133(b)(2) and 5-205(b)(2) were unconstitutional as applied to Mr. Fooks.

The State urged the court to evaluate the constitutionality of §§ PS 5-133(b)(2) and 5-205(b)(2) using the streamlined approach. Under this analysis, the court would determine whether Mr. Fooks "is a law abiding responsible citizen to use arms in defense of hearth and home." The State mentioned the landmark firearms case, *District of Columbia v. Heller*, 554 U.S. 570 (2008), and noted that the Supreme Court "specifically stated that nothing in the [*Heller*] opinion should cast doubt on the prohibitions against the possession of firearms." Therefore, the State argued, Sections 5-133(b)(2) and 5-205(b)(2) were presumptively valid. The State also argued that Mr. Fooks lacked standing to challenge his firearm-related charges because he didn't own the firearms, and his possession of them was "not used in protection of hearth and home . . . ." And as such, the State asserted, the motions court was barred from proceeding to the second prong of the test and considering whether the statutory provisions survived judicial scrutiny.

Defense counsel replied that Mr. Fooks had standing to challenge the laws "by virtue of being charged with possession of firearms . . . . " The court asked whether it mattered that Mr. Fooks did not own the firearms he was charged with possessing:

> I suppose, if [Mr. Fooks's] just here to say [the firearms] weren't mine, I never had possession of them, but I would like to assert my Second Amendment right. I don't know, I might be wrong, Counsel, but I saw in the State's answer that . . . their contention that [the guns] were not his, he was not possessing them in an effort to protect hearth and home, that he was selling them, it was a commercial transaction. And, in essence, that raised the question that if . . . the absence of the ability to claim ownership or control, other than for purposes of pawning them,

where does that come into play in this analysis that you're all giving me?

Defense counsel responded that the court was supposed to consider the conviction that disqualifies firearm possession in the first place, not the charge of firearm possession itself. The court was confused by this distinction: "If you were just challenging the statute, not as applied, but just the statute based on the plain language of the statute, that would be one thing. But your argument is as applied, as applied means to the facts." The court reserved ruling on Mr. Fooks's motion to dismiss and provided the parties with an opportunity to research the standing issue.

On March 22, 2021, Mr. Fooks supplemented his original motion to dismiss. The defense argued that Mr. Fooks had standing to make an as-applied challenge to PS §§ 5-133(b)(2) and 5-205(b)(2) because Mr. Fooks was "not alleged to have possessed any firearms which required special permits." In addition, defense counsel asserted a facial constitutional challenge for the first time:

> Typically, to be successful in challenging a statute on its face, a facial challenge must show that there are no circumstances under which the statute would be constitutional. [Mr. Fooks] was operating under this rule when [he] improvidently indicated [at the motions hearing] that [he] was not making a facial challenge. However, when a challenged statute infringes fundamental rights, such as by being so vague that it violates due process, or so overbroad that it infringes on protected speech, the Court must strike down the statute. If the statute encroaches on fundamental rights in marginal cases, even if not directly in the challenger's case, it provides standing to the party to challenge the statute even if it were constitutional on an as-applied basis.
>
> Here, [Mr. Fooks] respectfully requests the Court to consider this challenge as well, though [Mr. Fooks] does not believe it changes the analysis significantly. On a facial challenge where

7

> fundamental rights are involved, a court would consider imaginary marginal cases, even where the challenger's case is constitutional. As argued at the Motions Hearing, this case is the imaginary marginal case: the common law offense which disqualified Mr. Fooks is Contempt. Most, if not all, common law offenses are more serious than Contempt.

(Cleaned up.) The supplement concluded that "given the benign nature of Mr. Fooks'[s] disqualifying offense," the analysis of whether PS §§ 5-133(b)(2) and 5-205(b)(2) were facially unconstitutional was "no different" than the analysis of whether the statutes were unconstitutional as applied. Counsel asked the court to "avoid the facial challenge" by "granting the motion to dismiss[] based on a[n] as-applied challenge."

The State replied on April 14, 2021 and reiterated its argument "that Mr. Fooks does not have a Second Amendment right in someone else's guns," and thus that the statutes were both facially constitutional and constitutional as applied. That same day, the circuit court, without any explanation, denied Mr. Fooks's motion to dismiss. Mr. Fooks entered a conditional plea and the court sentenced him to two consecutive five-year terms of imprisonment, suspending all but time served. The court also placed Mr. Fooks on two years of supervised probation.

Mr. Fooks noted a timely appeal. We supply additional facts as necessary below.

## II.     DISCUSSION

On appeal, Mr. Fooks contends that the circuit court erred in denying Mr. Fooks's motion to dismiss.[4] *First*, Mr. Fooks argues that Maryland's statutory scheme regarding

---

[4] Mr. Fooks phrased the Question Presented in his brief as follows:

> Did the Motions court err in denying Mr. Fooks' motion to dismiss because Maryland Code, Public Safety Article,

disarmament laws is facially unconstitutional. *Second*, he argues that PS §§ 5-133(b)(2) and 5-205(b)(2) are unconstitutional as applied to him. The State responds that the circuit court properly denied Mr. Fooks's motion to dismiss because PS §§ 5-133(b)(2) and 5-205(b)(2) "comport with the Second Amendment."

"The standard of review of the grant or denial of a motion to dismiss is whether the trial court was legally correct." *Myers v. State*, 248 Md. App. 422, 430–31 (2020) (cleaned up). "We review the denial of a motion to dismiss de novo." *Id.* at 431 (citations omitted). Further, "[t]he proper scope of a constitutional right, and its application to a particular set of facts, are issues of law." *Pizza di Joey, LLC v. Mayor of Balt.*, 470 Md. 308, 339 (2020) (citations omitted). "Therefore, we review such questions *de novo*." *Id.* (*citing Schisler v. State*, 394 Md. 519, 535 (2006)).

### A.    A Brief Overview Of Second Amendment Jurisprudence.

We begin with the Second Amendment to the United States Constitution, which provides that "[a] well regulated militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment applies to the states by way of the Due Process Clause of the Fourteenth Amendment. *McDonald v. City of Chi.*, 561 U.S. 742, 750 (2010).

---

§ 5-205(b) and § 5-133(b), are unconstitutional, or are unconstitutional as applied in this case?

The State phrased its Question Presented as follows:

Did the circuit court properly deny Fooks's motion to dismiss because Sections 5-205(b)(2) and 5-133(b)(2) of the Public Safety Article of the Maryland Code comport with the Second Amendment?

The analytical starting point in any modern-day Second Amendment case is the Supreme Court's decision in *Heller*. In *Heller*, the Court considered the constitutionality of the District of Columbia's prohibition on handgun possession in the home. 554 U.S. at 573. The seminal issue was whether the Second Amendment "protects only the right to possess and carry a firearm in connection with militia service" or whether "it protects an individual right to possess a firearm unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such as self-defense within the home." *Id.* at 577. The Court reasoned that "[t]he Second Amendment is naturally divided into two parts: its prefatory clause and its operative clause." *Id.* But the Court noted as well that the prefatory clause "does not limit the [operative clause] grammatically, but rather announces a purpose." *Id.* The Court concluded, therefore, "that the Second Amendment conferred an individual right to keep and bear arms" unconnected with militia service. *Id.* at 595.

But the Court emphasized that "[l]ike most rights, the right secured by the Second Amendment is not unlimited" and observed that "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626 (citation omitted). The Court declined to "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment" and cautioned that "nothing in our opinion should be taken to cast doubt on the [] prohibitions on the possession of firearms by felons and the mentally ill, . . . or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27. The Court identified "these presumptively lawful regulatory measures only as examples" and its list did "not purport

to be exhaustive." *Id.* at 627 n.26.

In *McDonald*, the Court reiterated *Heller's* holding "that individual self-defense is 'the *central component*' of the Second Amendment right." 561 U.S. at 767 (*quoting Heller*, 554 U.S. at 599) (emphasis in original). The Court maintained that "*Heller* makes it clear that this right is 'deeply rooted in this Nation's history and tradition.'" *Id.* at 768 (*quoting Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). It also "repeat[ed] those assurances" made in *Heller*—"that our holding did not cast doubt on such [] regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,'" *id.* at 786 (*quoting Heller*, 554 U.S. at 626–27), and did "not imperil every law regulating firearms." *Id.*

This brings us to *New York State Rifle & Pistol Association, Inc. v. Bruen*, No. 20-843, 597 U.S. --- (June 23, 2022), decided after this case was submitted. *Bruen* addressed the constitutionality of state limitations on carry licenses for *law-abiding* citizens and held that those citizens' right to own and carry firearms extended beyond the home into public spaces. *See, e.g.*, *id.*, slip op. at 1. *Bruen* didn't deal at all with limitations grounded in prior criminal behavior. The majority opinion refers repeatedly to law-abiding citizens' rights to own and carry handguns and takes care to note that its analysis builds on *Heller* and *McDonald*, *see Bruen*, slip op. at 10–22, which, as we discussed just above, expressly did not cast doubt on laws limiting disqualified persons' access to guns. *See also id.* ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing

11

conditions and qualifications on the commercial sales of arms.") (Kavanaugh, J., concurring), slip op. at 3 (*quoting Heller*, 554 U.S. at 626–27). As we'll discuss below, *Bruen* narrowed the general Second Amendment analysis of laws limiting the right to keep and bear arms to focus solely on whether limitations on gun ownership fall within the scope of protected Second Amendment activity. The Court defined those boundaries solely by reference to historical traditions of firearms regulation and eliminated any means-ends analysis of those laws. *Id.*, slip op. at 10–22. That analytical shift doesn't affect the analysis or outcome here, though—for reasons we'll explain, Mr. Fook's arguments here will fail at the first analytical step.

With this framework in mind, we turn to the contentions before us here.

## B. PS §§ 5-133(b)(2) And 5-205(b)(2) Are Not Facially Unconstitutional.

Mr. Fooks argues *first* that "[t]he contours of the Second Amendment's guarantee of the fundamental right to keep and bear arms do not permit the criminalization of possession of a rifle/shotgun or regulated firearm . . . based upon a conviction for the common law crime of 'constructive criminal contempt.'" For that reason, he contends, PS §§ 5-133(b)(2) and 5-205(b)(2) are facially unconstitutional. The State responds that Mr. Fooks's facial challenge is unpreserved. But even if we find the challenge preserved, the State asserts that it's meritless because Mr. Fooks failed to "assert that there is no set of circumstances under which the statutes would be constitutional . . . ."

### 1. Mr. Fooks's facial challenge is preserved.

Before reaching the merits, we address the State's contention that Mr. Fooks's facial

12

constitutional challenge is not preserved for appellate review. The State argues Mr. Fooks failed to "explicitly state that he is asserting a facial challenge to PS §§ 5-133 and 5-205" in any of his pleadings:

> [Mr.] Fooks repeatedly asserted below that he was asserting an as-applied challenge. It was not until *after* the motions hearing that [Mr.] Fooks filed a supplement in which he stated that he "improvidently indicated that [he] was not making a facial challenge." The circuit court, however, denied [Mr.] Fooks's motion to dismiss before the State filed its response to that supplement. [Mr.] Fooks did not properly present his facial challenge to the circuit court, and it appears that the court did not even address it. This Court should deem the issue waived and decline to review it. Md. Rule 8-131(a).

(Cleaned up.) (Emphasis in original.)

Generally, we "will not decide any other issue unless it plainly appears by the record to have been raised in *or* decided by the trial court . . . ." Md. Rule 8-131(a) (emphasis added). Under the plain language of the Rule, we may consider issues that were not decided by the circuit court so long as the parties raised the issues there. *See Sellman v. State*, 152 Md. App. 1, 24 (2003) ("It is not necessary that the issue have been decided, so long as it was raised."); *Stevenson v. State*, 180 Md. App. 440, 447 (2008) ("Here, the circuit court denied appellant's motion, but declined to address the merits of her claim. Before this Court, appellant raises the same issue that she presented to the circuit court; therefore, despite the circuit court's avoidance of that issue, it is properly before us.").

During the motions hearing, defense counsel challenged PS §§ 5-133(b)(2) and 5-205(b)(2) only on an as-applied basis. In the supplement, defense counsel acknowledged that "to be successful" when asserting a facial constitutional challenge, the "facial

13

challenge must show that there are no circumstances under which the statute would be constitutional." The defense stated it "was operating under this rule when it improvidently indicated that it was not making a facial challenge" during the motions hearing. The court reserved ruling on the motion, however, and provided the parties with an opportunity to conduct further research to supplement their arguments. In its supplemental filing, the defense found another way to assert a facial constitutional challenge—"when a challenged statute infringes fundamental rights . . . the Court must strike down the statute." In the supplement, counsel for Mr. Fooks asked the court explicitly to consider the facial challenge when ruling on the motion.

We are comfortable that Mr. Fooks raised a facial constitutional challenge in the circuit court. The fact that the court denied Mr. Fooks's motion to dismiss without explanation does not negate that Mr. Fooks asked the court (albeit in his supplement to the original motion) to consider a facial challenge when determining the constitutionality of PS § 5-133(b)(2) and 5-205(b)(2). His appellate claim that these laws are facially unconstitutional is preserved adequately, and we will address it.

2. *Despite being preserved, Mr. Fooks's facial challenge fails.*

The State insists that even if Mr. Fooks's facial challenge is preserved, it nevertheless is "meritless." Mr. Fooks responds that because a conviction of constructive criminal contempt "contains no element of violence, or anything that bespeaks of dangerousness[,]" "the statutory [firearm possession] scheme" under which Mr. Fooks was charged "infringes upon [his] fundamental, deeply-rooted, Second Amendment right" to bear arms. He asserts that not only is criminal contempt "an otherwise nondescript common

14

law offense whose nomenclature does not make readily apparent any particular conduct or concomitant intent," it also is "exceedingly broad."

The disqualification at issue prohibits a person who "has been convicted of a violation classified as a common law crime and received a term of imprisonment of more than 2 years" from possessing firearms. PS § 5-133(b)(2).[5] Our *first* task, then, is to determine whether constructive criminal contempt meets this definition. Criminal contempt is a common law offense. *In re Ann M.*, 309 Md. 564, 569 (1987). And because there are no sentencing guidelines or statutory provisions to guide sentencing for criminal contempt convictions,[6] a court's "power to punish for contempt arises from the common law and is deemed essential for the protection and existence of the courts." *Id.* at 568 (citations omitted). Moreover, "the only restrictions on sentencing for a common-law crime are (absent a penalty prescribed by statute) that the sentence be within the reasonable discretion of the trial judge and that it not be cruel and unusual punishment." *Street v. State*, 307 Md. 262, 266 (1986). When Mr. Fooks was convicted of constructive criminal contempt, he received a term of imprisonment of more than four years, so under a plain reading of PS §§ 5-133(b)(2) and 5-205(b)(2), he is prohibited from possessing firearms.

We *next* must determine whether PS §§ 5-133(b)(2) and 5-205(b)(2) are facially

---

[5] The language of PS §§ 5-133(b)(2) and 5-205(b)(2) are nearly identical, with the exception that § 5-133(b)(2) states "classified as a common law crime" and § 5-205(b)(2) states "classified as a crime under common law[.]"

[6] Indeed, the Maryland Sentencing Guidelines Manual states that criminal contempt is "excluded from guidelines coverage[.]" Md. State Comm'n on Crim. Sent'g Pol'y, Md. Sent'g Guidelines Manual (Feb. 1, 2022), at 1.

15

unconstitutional. A facial constitutional challenge is "[a] claim that a statute is unconstitutional on its face—that is, that it always operates unconstitutionally." Facial Challenge, Black's Law Dictionary (11th ed. 2019). "[T]o be successful, a facial challenge must establish that there is no set of circumstances under which the statute would be constitutional." *Motor Vehicle Admin. v. Seenath*, 448 Md. 145, 181 (2016) (cleaned up). "[A] party has standing to raise a facial challenge only if the statute or practice that is the subject of the facial challenge may violate a fundamental constitutional right." *Id.* (citation omitted). Because *Heller* held that the right to bear arms is a fundamental constitutional right, Mr. Fooks has standing to raise his facial challenge.

But Mr. Fooks has failed to show that there are no set of circumstances under which PS §§ 5-133(b)(2) and 5-205(b)(2) are constitutional. He makes no mention and provides no examples of how PS §§ 5-133(b)(2) and 5-205(b)(2) are unconstitutional in all potential applications. Indeed, Mr. Fooks has failed to show that the statutes are unconstitutional in *any* applications. The fact that constructive criminal contempt "contains no elements of violence" proves nothing by itself. As we discuss below, there is no requirement that an individual be convicted of a violent crime to be prohibited from possessing a firearm.

As far as we can tell, neither the Court of Appeals nor this Court has considered the constitutionality of public safety disqualification provisions.[7] In *Corcoran v. Sessions*, 261 F. Supp. 3d 579 (D. Md. 2017), however, the United States District Court for the District

---

[7] Mr. Fooks points us to *Williams v. State*, 417 Md. 479 (2011), but that case concerned a conviction stemming from the Criminal Law article, not the Public Safety article.

of Maryland did. Mr. Corcoran was convicted in Virginia of unauthorized use of a vehicle. *Id.* at 583. Years later in Maryland, Mr. Corcoran applied for a handgun license. *Id.* at 584. The Maryland State Police denied his application because the Virginia conviction disqualified him from possessing a firearm in Maryland. *Id.* at 585. Mr. Corcoran sued, arguing that Maryland's firearm prohibitions infringed on his Second Amendment right to bear arms "by failing to differentiate between violent and non-violent offenders." *Id.* at 587.

The district court disagreed. The court compared the statute under which Mr. Corcoran was disqualified from possessing a firearm, PS § 5-133(b)(1), with a federal prohibition statute, 18 U.S.C. § 922(g)(1), which makes it "unlawful for any person[] who . . . has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. The court cited *United States v. Moore*, 666 F.3d 313 (4th Cir. 2012), where the Fourth Circuit cited "*Heller's* 'presumptively lawful' language" to conclude that 18 U.S.C. § 922(g)(1) "did not violate the Second Amendment on its face." *Corcoran*, 261 F. Supp. 3d at 588. The court determined that the Fourth Circuit's analysis in *Moore* applied to Mr. Corcoran's challenge of PS § 5-133(b)(1):

> [Mr.] Corcoran's attempt to distinguish the federal and Maryland laws is unpersuasive. He is correct that § 922(g)(1) and the Maryland Firearms Prohibitions differ in that the federal law looks to the maximum sentence in the jurisdiction in which the proceedings were held, whereas the Maryland laws look to the closest equivalent crime listed within its own Criminal Article. This distinction, however, does not alter the application of the *Moore* analysis to this case, especially in light of the Fourth Circuit's holding in *Hamilton* [*v. Pallozzi*, 848 F.3d 614 (4th Cir. 2017)] that analysis of 18 U.S.C. § 922(g)(1) is equally applicable to Maryland's firearms

17

regulatory scheme. . . . In this context, the State to which the two laws look to in order to determine whether a crime amounts to a disqualifying crime is irrelevant. Thus, *Moore's* reference to the Supreme Court's statement in *Heller* that "nothing in our opinion should be taken to cast doubt on [] prohibitions on the possession of firearms by felons . . ." has equal application to the instant case.

*Id.* at 588–89 (footnotes omitted). Therefore, Mr. Corcoran failed to "show[] that Maryland's Firearms Prohibitions are unconstitutional in all their applications." *Id.* at 589.

So too here. We recognize that the Supreme Court's presumption that the Second Amendment did not apply to "prohibitions on the possession of firearms" only explicitly mentioned those classified as "felons and the mentally ill . . . ." *Heller*, 554 U.S. at 626. But the Court also stated explicitly that this classification was an example and was not meant to be an all-inclusive list, *id.* at 627 n.26, and nothing in *Bruen* even purports to question, let alone alter, this principle. A statute prohibiting an individual convicted of a common law crime and sentenced to more than two years' incarceration is presumptively lawful, and Mr. Fooks has failed to rebut that presumption. He also has provided us with no evidence that PS §§ 5-133(b)(2) and 5-205(b)(2) are unconstitutional in all their applications. We hold that PS §§ 5-133(b)(2) and 5-205(b)(2) are facially constitutional.

### C. PS §§ 5-133(b)(2) And 5-205(b)(2) Are Not Unconstitutional As Applied To Mr. Fooks.

Determining that PS §§ 5-133(b)(2) and 5-205(b)(2) are facially constitutional does not resolve Mr. Fooks's *second* argument—that the statutes are unconstitutional as applied to him. An as-applied challenge is "a claim that a statute is unconstitutional on the facts of a particular case or in its application to a particular party." As-Applied Challenge, Black's

Law Dictionary (11th ed. 2019). "A party always has standing to raise an as-applied challenge . . . ." *Seenath*, 448 Md. at 181.

Mr. Fooks provides us with several reasons why PS §§ 5-133(b)(2) and 5-205(b)(2) are unconstitutional as applied to him:

- A conviction of criminal contempt "is not a felony, *per se*, and is not inherently dangerous."

- The State provided no evidence that Mr. Fooks sustained a criminal contempt conviction after acting violently.

- Under the historical inquiry analysis, it cannot be said with certainty "that constructive criminal contemnors were historically considered beyond the scope of the protections of the Second Amendment, nor can such an offense be fairly considered a 'serious crime.'"

- Disqualifying Mr. Fooks from possessing a firearm "does nothing to further the State's interest in dispossessing dangerous felons or violent misdemeanants of their firearms." The prohibition is "simply not a 'reasonable fit' to the State's interests."

Mr. Fooks asserts that, for these reasons, we "cannot abide a result that criminalizes the fundamental Second Amendment constitutional right to keep and bear arms because of a prior conviction for a non-violent, non-serious offense that is so inherently broad and vague in its nature as 'constructive criminal contempt,'" for "failure to pay child support." We disagree.

We walk *first* through the analysis for determining the constitutionality of an as-applied challenged disarmament law. *Second*, we analyze whether we may consider a law presumptively valid and bypass a historical inquiry approach for as-applied challenges, and we determine that PS §§ 5-133(b)(2) and 5-205(b)(2) are presumptively valid. *Third*,

19

we conclude that Mr. Fooks's conduct is not "within the protected Second Amendment right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Hamilton*, 848 F.3d at 624 (*quoting Heller*, 554 U.S. at 635; *Moore*, 666 F.3d at 318–19). And for these reasons, PS §§ 5-133(b)(2) and 5-205(b)(2) are not unconstitutional as applied to Mr. Fooks.

### 1. The Fourth Circuit framework for as-applied challenges

Because this is an issue of first impression in Maryland, we look to other jurisdictions for guidance. *Jocelyn P. v. Joshua P.*, 250 Md. App. 435, 468 (2021) ("Without Maryland caselaw to guide our inquiry, we look to other states that have addressed the issue . . . ."). In 2010, the Fourth Circuit "established a two-prong test for assessing a Second Amendment challenge." *Hamilton*, 848 F.3d at 623. This is commonly called the *Chester* test. *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010). The *first* prong requires the court to determine "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Id.* at 680 (cleaned up). If "the conduct at issue" was not "understood to be within the scope of the right at the time of ratification," the law is valid. *Id.* (*citing Heller*, 554 U.S. at 625). If, however, "the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood," the court must "apply[] an appropriate form of means-end scrutiny." *Id.* (*citing United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)).

Two years later, however, the Fourth Circuit "refined and crystallized" the *Chester* test. *Hamilton*, 848 F.3d at 623 (*citing Moore*, 666 F.3d at 318). In *Moore*, 666 F.3d at 313,

20

the Fourth Circuit allowed for a "'more streamlined [analysis] when a presumptively lawful regulatory measure is under review.'" *Hamilton*, 848 F.3d at 623 (*quoting Moore*, 666 F.3d at 318). Under the streamlined test, "a litigant claiming an otherwise constitutional enactment is invalid as applied to him must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Moore*, 666 F.3d at 319.

In *Hamilton*, the Fourth Circuit considered the constitutionality of the same Maryland statute considered in *Corcoran*, PS § 5-133(b)(1). 848 F.3d at 623. PS § 5-133(b)(1) provides that "a person may not possess a regulated firearm if the person . . . has been convicted of a disqualifying crime[.]" Mr. Hamilton was convicted in Virginia of "receiving property by stolen, counterfeit, or misrepresented credit card," "credit card counterfeiting," and "credit card theft." *Hamilton*, 848 F.3d at 619. The first two convictions were felonies, thus disqualifying him from possessing a firearm in Maryland. *Id.* Mr. Hamilton wanted to apply for a permit to carry a handgun in Maryland, but "was ultimately informed by an Assistant Attorney General that he could not possess a firearm in Maryland unless he obtained a full pardon from the Governor of Virginia." *Id.* So Mr. Hamilton filed a lawsuit, seeking "a declaration that the regulatory scheme [(PS §§ 5-133(b)(1) and 5-205(b)(1))] is unconstitutional under the Second Amendment as applied to him . . . ." *Id.*

The United States District Court for the District of Maryland applied the two-prong test and concluded that Mr. Hamilton failed to satisfy the first prong because he did "not show[] that his factual circumstances remove his challenge from the realm of ordinary challenges." *Id.* (cleaned up). After recognizing that PS §§ 5-133(b)(1) and 5-205(b)(1)

21

were presumptively lawful, the court proceeded with the streamlined analysis. Because the court determined that Mr. Hamilton was not a law-abiding responsible citizen "to whom Second Amendment protections enure," it ended its inquiry and dismissed Mr. Hamilton's compliant. *Id.* at 623. Mr. Hamilton filed a timely appeal to the Fourth Circuit.

On appeal, Mr. Hamilton argued against a streamlined analysis, stating that the court "essentially dispense[s] with the second step in as-applied felon-disarmament challenges . . . , assume[s] there can be no justification for disarming someone who is a law-abiding, responsible citizen, and evaluate[s] all the factual circumstances of the challenger at step one of the *Chester* inquiry." *Id.* at 623–24 (cleaned up). The Fourth Circuit disagreed, reasoning that the court "still conduct[s] the traditional second step of applying an appropriate means-end scrutiny even for laws that receive a streamlined analysis." *Id.* at 624 (*citing United States v. Hosford*, 843 F.3d 161, 167 (4th Cir. 2016)).

The only difference between the traditional *Chester* test and the streamlined *Moore* test was whether the court had to conduct "an extensive historical inquiry" at the first step. *Id.* If a challenged law is presumptively valid and the challenger does not rebut the presumption, the court will "effectively supplant the historical inquiry with the more direct question of whether the challenger's conduct is within the protected Second Amendment right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Id.* (*quoting Heller*, 554 U.S. at 635; *Moore*, 666 F.3d at 318–19). If Mr. Hamilton could demonstrate that he was a law-abiding, responsible citizen, the court would proceed to the second prong and conduct a means-end scrutiny analysis. *Id.*

Under the first prong, the Fourth Circuit held "that a challenger convicted of a state

22

law felony generally cannot satisfy step one of the *Chester* inquiry . . . ." *Id.* at 625. The court reasoned that the "conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment," except if the "conviction is pardoned or the law defining the crime of conviction is found unconstitutional or otherwise unlawful." *Id.* at 626. In light of these principles, the court concluded that Mr. Hamilton failed to satisfy step one of the *Chester* inquiry:

> Theft, fraud, and forgery are not merely errors in filling out a form or some regulatory misdemeanor offense; these are significant offenses reflecting disrespect for the law.

> [Mr.] Hamilton is a state law felon, has not received a pardon, and the basis for his conviction has not been declared unconstitutional or otherwise unlawful. As such, he cannot state a claim for an as-applied Second Amendment to Maryland's regulatory scheme for handguns and long guns.

*Id.* at 627–28 (footnote omitted). Because Mr. Hamilton failed the first step of the two-prong test, the court was not required to conduct a means-end analysis. The Fourth Circuit affirmed the dismissal.

In *Bruen*, in the context of evaluating New York's licensing laws, the Supreme Court declined to adopt both prongs of the two-prong test. "Despite the popularity of this two-step approach" and the fact that the federal Courts of Appeals unanimously had adopted and followed it, the Court considered the test to contain "one step too many." *Bruen*, slip op. at 10. "In keeping with *Heller*," the Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct":

> To justify its regulation, the government may not simply posit that the regulation serves an important interest. Rather, the

> government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961).

*Bruen*, slip op. at 8 (footnote omitted). The Court rejected the notion that *Heller* and *McDonald* supported means-ends scrutiny in the Second Amendment context. "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 10.

### 2. *PS §§ 5-133(b)(2) and 5-205(b)(2) are presumptively lawful.*

Our *first* task, then, is to determine whether PS §§ 5-133(b)(2) and 5-205(b)(2) are presumptively lawful. As discussed above, we hold that they are. The burden is on Mr. Fooks to rebut the presumption. He disputes that a prohibition from possessing firearms because of a criminal contempt conviction is presumptively lawful. He argues that because "the Supreme Court did not include 'criminal contemnors as a class,' and it is at least unclear whether history meant to include them, it must be assumed that Mr. Fooks'[s] Second Amendment rights remained intact" (cleaned up). But again, the Supreme Court recognized in *Heller* the "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626–27. These "presumptively lawful regulatory measures" were merely examples and not meant "to be exhaustive." *Id.* at 627 n.26.

24

We agree with the circuit court that a court could find a statute presumptively valid based solely on the legislature's determination that people convicted of a common law crime who receive a prison term of more than two years should be disqualified from possessing a firearm. A look at the statutory language also supports a conclusion that the statutes are presumptively valid. Section 5-133(b)(2) provides that "a person may not possess a . . . firearm if the person . . . has been convicted of a violation classified as a common law crime and *received a term of imprisonment of more than 2 years*[.]" (Emphasis added.) The statute is not ambiguous. The legislature didn't provide that *any* common law conviction disqualified an individual from possessing firearms. It enumerated specifically that the individual had to receive a sentence of more than two years to be disqualified. It is the sentence imposed, not the classification of the common law crime, that determines the seriousness of the offense. As the State characterized it in its brief, "[Mr.] Fooks was not stripped of his constitutional right to keep and bear arms because he simply *failed* to pay child support" (emphasis in original). Rather, he "was convicted of *willfully* refusing to comply with a court order to support his children, and the circumstances of his defiance were so egregious that the circuit court sentenced [him] to serve *over two years' incarceration*." (Emphasis in original.) This is hardly a controversial prospect—indeed, the Family Law Article authorizes sentences of up to three years for failing to pay child support. *See* Maryland Code (1984, 2019 Repl. Vol.), § 10-203(c) of the Family Law Article (providing for a three-year maximum penalty for willfully failing to pay child support). We don't know why Mr. Fook's underlying case proceeded under common law criminal contempt rather than as a family law case, but it doesn't matter. The

conviction and sentence are valid, and PS §§ 5-133(b)(2) and 5-205(b)(2) are presumptively lawful.

### 3. Mr. Fooks's conduct does not fall "within the protected Second Amendment right of law-abiding, responsible citizens to use arms in defense of hearth and home."[8]

Because the statutes are presumptively lawful, the Fourth Circuit's analysis directed us to look next at whether Mr. Fooks's "conduct is within the protected Second Amendment right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Hamilton*, 848 F.3d at 624 (*quoting Heller*, 554 U.S. at 635; *Moore*, 666 F.3d at 318–19). *Bruen* does as well, but it defines the boundaries of firearms regulation solely in historical terms. *Bruen*, slip op. at 17 ("The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding.").

Beyond saying, without historical support, that criminal contemnors weren't included in the historic definition of "felons" excluded from firearms regulation, Mr. Fooks asks us, in effect, to treat him as a law-abiding, responsible citizen for Second Amendment purposes because criminal contempt is non-violent and the State failed to prove that he is a dangerous person. The State responds that the correct question is whether the disqualifying offense is serious, not whether it's violent. In the State's view, the fact "[t]hat there is concededly no evidence of violence in the record is therefore not dispositive of whether" Mr. Fooks is a law-abiding, responsible citizen for these purposes.

---

[8] *Hamilton*, 848 F.3d at 624 (cleaned up).

26

Again, Maryland courts have not addressed this directly, but others have. Last year, the Supreme Court of Wisconsin addressed an as-applied Second Amendment challenge in a case similar to this one. *State v. Roundtree*, 952 N.W.2d 765 (Wis. 2021). Mr. Roundtree appealed his conviction for possession of a firearm as a felon, arguing that "Wisconsin's lifetime firearm ban for all felons is unconstitutional as applied . . . because his conviction over ten years ago for failure to pay child support does not justify such a ban." *Id.* at 767. Mr. Roundtree asserted that his conviction for failure to pay child support was "a nonviolent felony" and that disqualifying him from owning a firearm served "no public safety objective . . . ." *Id.* The court held that the felon-in-possession "statute [was] constitutional as applied to [Mr.] Roundtree because it is substantially related to important governmental objectives, namely public safety and the prevention of gun violence." *Id.*

The court reasoned that "failure to pay child support is every bit as serious as [other crimes]. Those who fail to make support payments deprive the very people they should be protecting most, their own children, from receiving basic necessities. . . . By all accounts this is a serious offense." *Id.* at 773. And "[s]imply because [Mr. Roundtree's] crime was not physically violent in nature, it does not follow that the felon-in-possession statute cannot be constitutionally applied to" him. *Id.* at 774. The Court concluded that "even if a felon has not exhibited signs of physical violence, it is reasonable for the State to want to keep firearms out of the hands of those who have shown a willingness to not only break the law, but to commit a crime serious enough that the legislature has denominated it a felony . . . ." *Id.*

Although it's true that Wisconsin classifies failure to pay child support as a felony

and Maryland doesn't, the way we label an offense doesn't necessarily preclude us from still considering that offense serious. A quick glance at the statutory language confirms this. PS § 5-133(b)(1) prohibits an individual convicted of a disqualifying crime from possessing a firearm, and the range of disqualifying crimes includes crimes that aren't felonies or violent:

(1) a crime of violence;
(2) a violation classified as a felony in the State; or
(3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.

PS § 5-101(g)(1)–(3). By its plain language, then, the legislature intended for individuals convicted of violent crimes to be disqualified from possessing a firearm. But the legislature also prohibits a "fugitive from justice" from possessing a firearm. PS § 5-133(b)(3). Although there is no indication that fugitives from justice are dangerous or violent, the legislature decided that such a status was serious enough to prohibit a fugitive from possessing a firearm. The same rationale applies to individuals convicted of common law offenses who receive a term of imprisonment of *more than two years*. In other words, all of the prohibitions enumerated in PS § 5-133(b)(1)–(13) are defined by conduct and statuses that the legislature has denominated as serious enough to be disqualifying.[9]

Mr. Fooks is not, for these purposes, a law-abiding citizen. It's not just that he failed to pay child support, but his failure rose to the level of criminal contempt that was punished by a sentence of longer than two years. His conduct fell outside the scope protected by the

---

[9] These same thirteen prohibitions are enumerated in PS § 5-205—the only difference being these prohibitions apply to shotguns and rifles, not regulated firearms.

28

Second Amendment, and PS §§ 5-133(b)(2) and 5-205(b)(2) are not unconstitutional as applied to him.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**